**DANNY GRACE PLLC**
ATTORNEYS AND COUNSELORS AT LAW



Writer's email:douglas@dannygracepc.com
Writer Admitted in:New York; United States District Court, Southern District of New York, Eastern District of New York; Northern District of New York

225 BROADWAY, SUITE 1200
NEW YORK, NY 10007
(516) 748-9848
718.732-2821 FAX

VIA ECF
Hon. Lorna G. Schofield
U.S. District Judge
U.S. District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

Re:   *Archimbaud v. Gannett Company, Inc. (Civ. No. 1:23-CV-02133-LGS)*
      *Joint Letter of the Parties*

Dear Judge Schofield:

The parties write jointly to set forth their respective positions with respect to the above-captioned matter.

1. **Plaintiff's Position:**

**Arbitration Agreement**: On April 27, 2023, Defendant's counsel advised me that Plaintiff had signed an Arbitration Agreement with Defendant in 2011. I did not have prior knowledge of this fact, and Plaintiff has no recollection of the twelve-year old Agreement. In light of this, Plaintiff consents to a stay of this action pending filing in arbitration.

This is an action for the unlawful, retaliatory termination of Plaintiff by Defendant based on Plaintiff's disability, in violation of the ADA, NYSHRL, and NYCHRL.

Plaintiff began his employment with Gannett in January 2010, and at the time of his unlawful termination was employed as a Senior Digital Marketing Consultant. During his tenure with Gannett, Plaintiff was often in the top 5-15% of the salesforce, including earning the National President's Club award multiple years.

Plaintiff suffered the losses of his parents on April 10th and 11th, 2020, respectively. A few months earlier, Plaintiff had lost his uncle.  Additionally, Plaintiff's marriage of eighteen years came to an end during this time. The emotional and psychological impact of these events, occurring so close together, was devastating to Plaintiff.  In spite of this, Plaintiff continued to focus on servicing Gannett's clients and working to increase its client base.

Due to the onset of COVID-19, however, and in spite of Plaintiff's continued and best efforts, business became increasingly difficult. In January 2021, Plaintiff was placed on a performance improvement plan. While Plaintiff was steadfast in his belief that the quality of his work was not responsible for any downturn in productivity, he accepted and took very seriously any and all coaching suggestions given by his manager(s) at Gannett.

During this time, and again, in spite of the limitations that COVID-19 presented to the business community, and in spite of his being placed on a performance improvement plan, Plaintiff worked to land a lucrative client for the Company, Tipico, a company where Plaintiff had a professional contact and old friend. Plaintiff was then told that Gannett was in the process of trying finalize a larger, company-wide partnership with Tipico. Understandably, Plaintiff believed that he was deserving of a commission from the extensive efforts he made to build the relationship with Tipico. Instead, the client was taken from him and no commission was given, all without explanation.

Ultimately, the enormous stress associated with the death of his family members as well as his divorce, coupled with the professional blow of losing Tipico and any associated commissions, took its toll Plainitff's mental health, and on June 29, 2021, at the suggestion of medical professionals, Plaintiff reluctantly took disability leave. During the time of his leave, he continued to keep Gannett management informed about the terrible family tragedies that he was coping with and the effects of these tragedies on his mental health.

On November 16, 2021, upon his return to work following disability leave, Plaintiff was informed that his job was no longer available, in direct violation of the ADA. At the end of December 2021, Plaintiff was informed that his last day with the company would be January 7, 2022. On January 4, 2022, Plaintiff filed a formal complaint with Gannett. On January 6, 2022, Plaintiff again sent a letter to Gannett, and added an additional complaint of retaliatory termination. Inexplicably, Plaintiff was reinstated, only to then be placed on unpaid administrative leave, a de facto termination, without any accommodation having been made for his disability.

While Plaintiff was assured that his discrimination complaint would be fully investigated, he was terminated prior to any investigation having taken place. To date, Plaintiff has not been provided with any evidence of an investigation having been conducted in connection with his complaint.

The Company's abrupt termination of Mr. Plaintiff constitutes an unlawful retaliation in clear violation of the ADA, NYSHRL, and NYCHRL, which expressly prohibit covered employers from retaliating and terminating an employee based on a disability. Gannett was fully aware of Plaintiff's disability, and that he took medical leave to address it. Taking such leave constitutes a protected activity. Gannett did not make an attempt to accommodate Plaintiff's disability. Further, Gannett was obligated to engage in, at the very least, an interactive dialogue as required by law. On the contrary, the Company terminated Plaintiff so they would not have to cope with an employee with a disability.

Additionally, the temporal proximity between Plaintiff's medical leave and his abrupt termination undeniably shows a causal connection between his protected activity and the adverse

employment action taken against him, which constitutes retaliation under the ADA, NYSHRL, and NYCHRL.

**Subject Matter Jurisdiction**: This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 as this action involves federal questions regarding Defendant's discrimination of the Plaintiff based on his disability. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367 (a). Venue is proper in the United States District Court, Southern District of New York, pursuant to 28 U.S.C. §1391, because Defendants regularly transact business in the State of New York and the Southern District of New York.

**Motion Practice:** Plaintiff does not presently plan to make any motions. This is subject to change should any unresolvable discovery disputes arise.

**Discovery:** No discovery has been exchanged.

**Settlement:** Plaintiff is amenable to settling this action. I reached out to Defendant's counsel by email on May 1, 2023, to inquire whether counsel would like to confer by phone with regard to a possible settlement. Plaintiff would agree to the scheduling of a settlement conference in the event the matter cannot be resolved without the Court's intervention.

2. **Defendant's Position:**

**Arbitration Agreement:** Mr. Archimbaud signed an arbitration agreement during the course of his employment, which Gannett has provided to Plaintiff and Plaintiff's counsel. Both parties agree to stay the federal litigation pending arbitration.

Gannett contends there is no basis for Mr. Archimbaud's claims of disability discrimination and/or retaliation under the ADA, NYSHRL, and NYCHRL, but the appropriate forum to adjudicate those claims is in arbitration. Mr. Archimbaud signed an arbitration agreement during his employment, in which he clearly agreed to arbitrate all claims arising out of his employment, including federal, state, and/or local discrimination claims. Gannett will seek to enforce that arbitration agreement, stay proceedings in this Court, and compel arbitration.

With respect to the termination of Mr. Archimbaud's employment, Gannett placed Mr. Archimbaud on several Performance Improvement Plans ("PIPs") beginning before the onset of his alleged disability. Despite multiple chances to improve his performance, Mr. Archimbaud continued to fail to meet his sales objectives. After over a year of PIPs and genuine efforts to assist him, Gannett informed Mr. Archimbaud in January 2021 that he would need to find another opportunity within Gannett by June 2021 or be terminated. Mr. Archimbaud's supervisors assisted him in exploring other positions within Gannett. Although Mr. Archimbaud had several internal interviews, none of those positions panned out. In late June, 2021, Gannett informed Mr. Archimbaud he would be let go by July 1, 2021. On June 29, 2021, Mr. Archimbaud filed a claim for leave of absence. Gannett did not terminate Mr. Archimbaud at that time and did not interfere with his leave in any way. Upon his return in the Fall of 2021, Gannett re-initiated the process of helping Mr. Archimbaud look for another position internally with a set date for termination if he failed to find another opportunity. Mr. Archimbaud again made efforts to secure a new position but was unsuccessful. When Gannett followed through on the planned

termination date, Mr. Archimbaud filed an internal complaint alleging discrimination/retaliation. The termination was again put on hold and Mr. Archimbaud placed on paid leave as Gannett conducted an investigation into his allegations. After Gannett determined Mr. Archimbaud's allegations were unfounded, he was terminated effective March 1, 2022.

Gannett terminated Mr. Archimbaud due solely to his poor performance and failure to improve that performance despite multiple PIPs.  This is a legitimate, non-discriminatory reason for the termination.  Gannett expects to make a motion for summary judgment at the end of discovery to seek judgment as a matter of law.

**Motion Practice:** Plaintiff's counsel has consented to stay litigation pending arbitration. Accordingly, Gannett will file a motion to compel arbitration, if necessary, and/or file a stipulation to stay arbitration.  After arbitration, the parties may file motions to vacate and/or confirm the arbitration award.  Should the case proceed in this Court, Gannett expects to make a motion for summary judgment at the end of discovery.

**Discovery:**  None to date.

**Settlement:** There have been no discussions to date, but Gannett is willing to discuss settlement at any time, with or without the assistance of a mediator.

    Thank you for your time and consideration of this matter.

Dated: May 2, 2023

By: ___/S/_____  
   Douglas Mace  
   Danny Grace PLLC  
   225 Broadway, Suite 1200  
   New York, New York 10007  
   516-748-9848  

By ___/S/_____  
   Robert C. Weissflach, Partner  
   Harter Secrest & Emery LLP  
   50 Fountain Plaza, Suite 1000, Buffalo, NY 14202-2293  
   716.844.3707  

The application for a stay of this action pending arbitration is GRANTED.  Both parties have communicated their consent to the stay.  The parties shall file a joint letter by **July 6, 2023**, and every 60 days thereafter, informing the court of the progress of the arbitration.  The parties shall file a joint letter within two days of the completion of arbitration to alert the Court.

Dated: May 4, 2023  
    New York, New York

_____  
LORNA G. SCHOFIELD  
UNITED STATES DISTRICT JUDGE